76 A.3d 1035

**Alonzo Jay KING, Jr.**

v.

**STATE of Maryland.**

**No. 68, Sept. Term, 2011.**

Court of Appeals of Maryland.

Sept. 25, 2013.

474

476

---

Celia Anderson Davis, Assistant Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for Appellant.

Sandra K. Levick, Esq., Tara Mikkilineni, Esq., David A. Taylor, Esq., Public Defender Service for the District of Columbia, Washington, D.C., David Rocah, Esq., ACLU Maryland Foundation, Baltimore, MD, for Amici Curiae brief of Public Defender Service for the District of Columbia and American Civil Liberties Union of Maryland in Support of Appellant, Alonzo Jay King, Jr., Urging Reversal.

Robert Taylor, Jr., Asst. Atty. Gen. (Douglas F. Gansler, Attorney General of Maryland, Baltimore, MD), on brief, for Appellee.

Argued before BARBERA, C.J., HARRELL, GREENE, ADKINS, BELL,* ALAN M. WILNER (Retired, Specially Assigned) and DALE R. CATHELL (Retired, Specially Assigned), JJ.

HARRELL, J.

In *King v. State,* 425 Md. 550, 42 A.3d 549 (2012) (*"King I"*), this Court held that the Maryland DNA Collection Act (the "Act"), which permits the collection by local law enforcement authorities of a DNA sample from individuals arrested for a crime of violence or other enumerated offenses, *see* Md. Code (2003, 2011 Repl. Vol.), Pub. Safety Art., § 2–504(a)(3), violated the Fourth Amendment to the United States Constitution as applied to Appellant, Alonzo Jay King, Jr. ("King"). In *Maryland v. King,* —— U.S. ——, 133 S.Ct. 1958, 186 L.Ed.2d 1 (2013), the Supreme Court of the United States reversed this Court's judgment, holding instead that the "DNA identification of arrestees is a reasonable search that can be considered part of a routine booking procedure," akin to fingerprinting and photographing. *Id.* at ——, 133 S.Ct. at 1980, 186 L.Ed.2d at 28. The Court concluded, therefore, that the DNA search of King did not violate his Fourth Amendment rights, and accordingly upheld his conviction for a 2003 rape. *Id.*

On remand from the Supreme Court, we are presented again with the opportunity to consider the constitutionality of King's conviction.[1] King argued originally before this Court for the reversal of his conviction on the grounds that the Act

---

* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in reaching the decision in this case.

1. For a description of the facts and procedural history underlying this case, see *King,* 425 Md. 550, 42 A.3d 549.

violated his constitutional rights as provided by the Fourth Amendment, as well as by Article 26 of the Maryland Declaration of Rights. Alternatively, King argued that, by presuming that the seizure of King's DNA was effected in accordance with the Act, the Circuit Court for Wicomico County shifted impermissibly the burden of proof to the defense, thus mandating reversal of his conviction. In *King* I, we examined King's constitutional argument under the Fourth Amendment, but did not consider expressly his Article 26 argument and did not reach his alternative argument.[2] King asks this Court now to consider the issues left unresolved by *King* I. The remaining two questions are:

(1) Does the Maryland DNA Collection Act violate Article 26 of the Maryland Declaration of Rights?; and

(2) Did the trial judge improperly shift the burden of proof to the defense to demonstrate that a search or seizure made without individualized suspicions is reasonable?

## I. King Did Not Preserve His Article 26 Argument For Appellate Review.

█ As a threshold matter, before we might reach the merits of King's Article 26 argument, we must address the State's challenge that King failed to raise this argument before the trial court. This Court will not consider ordinarily any issue "unless it plainly appears by the record to have been raised in or decided by the trial court . . ." Md. Rule 8–131(a). "[T]he animating policy behind Rule 8–131(a) is to ensure fairness for the parties involved and to promote orderly judicial administration." *Jones v. State,* 379 Md. 704, 714, 843 A.2d 778, 784 (2004). *See also State v. Bell,* 334 Md. 178, 189, 638 A.2d 107, 113 (1994).

King's argument in the trial court focused solely upon the Fourth Amendment challenge. He failed to include any reference to the Maryland Declaration of Rights. King mentioned

---

**2.** Because we determined that the collection of DNA from King was unconstitutional in *King* I, we declined to reach, as moot, these arguments. 425 Md. at 561, 42 A.3d at 556.

Article 26 of the Maryland Declaration of Rights for the first time in his brief to the Court of Special Appeals. Due to this error, the trial court was never given the opportunity to rule on the issue.

Nevertheless, it is well-settled that Md. Rule 8–131(a) vests this Court with the discretionary power "to decide such an [unpreserved] issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." Md. Rule 8–131(a). *See Abdul–Maleek v. State*, 426 Md. 59, 69, 43 A.3d 383, 389 (2012) ("Despite the applicability of general preservation principles, however, we are not precluded absolutely from reviewing Petitioner's [unpreserved] claim."); *Bible v. State*, 411 Md. 138, 148, 982 A.2d 348, 354 (2009) (plurality) ("[A]n appellate court's review of arguments not raised at the trial level is discretionary, not mandatory. The use of the word 'ordinarily' clearly contemplates both those circumstances in which an appellate court will not review issues if they were not previously raised and those circumstances in which it will." (internal quotation marks and citation omitted)); *Jones v. State*, 379 Md. at 712, 843 A.2d at 783 ("The word 'ordinarily' in Rule 8–131(a) anticipates that an appellate court will, on appropriate occasion, review unpreserved issues."). In considering whether to exercise this discretion, this Court examines, through a two-step analysis, whether such an exercise will further or hinder the goals of Rule 8–131(a):

First, the appellate court should consider whether the exercise of its discretion will work unfair prejudice to either of the parties ... Second, the appellate court should consider whether the exercise of its discretion will promote the orderly administration of justice.

*Id.*, 379 Md. at 713–15, 843 A.2d at 783–85 (discussing the principles this Court laid out "to guide the courts when consideration of unpreserved issues might be proper").

In the case *sub judice*, no unfair prejudice results to either the parties or the lower court in our determining King's Article 26 argument. King raises the issue and therefore

waives any prejudice for his side. Neither the State nor the lower court is prejudiced by the resolution of this issue because, as will be seen, our conclusion will not upset King's conviction. Furthermore, exercising our discretion to consider this unpreserved issue today will further the goals of Md. Rule 8–131(a) by "promot[ing] the orderly administration of justice." *Id.*, 379 Md. at 715, 843 A.2d at 784. "[D]eciding this question will provide guidance to trial courts, which are likely to be faced with the issue in other cases, as well as to lawyers and the public generally." *Bible*, 411 Md. at 152, 982 A.2d at 356. Therefore, we choose to exercise our discretion to excuse this default and address King's Article 26 argument.

We caution strongly, however, that "[o]ur decision to review unpreserved issues in this particular case should not be viewed as an indication that we will review unpreserved issues in future cases." *Conyers v. State*, 354 Md. 132, 151, 729 A.2d 910, 920 (1999). "While an appellate court has some discretion to address and decide unpreserved issues, ordinarily this discretion will not be exercised." *Id.*, 354 Md. at 150, 729 A.2d at 919. *See also Chaney v. State*, 397 Md. 460, 468, 918 A.2d 506, 511 (2007) ("It is a discretion that appellate courts should rarely exercise, as considerations of both fairness and judicial efficiency ordinarily require that all challenges that a party desires to make to a trial court's ruling, action, or conduct be presented in the first instance to the trial court . . .").

## II. The Maryland DNA Collection Act Does Not Violate Article 26 Of The Maryland Declaration Of Rights.

■ Because the Supreme Court determined that the DNA Collection Act complies with the Fourth Amendment, *see* —— U.S. at ——, 133 S.Ct. at 1980, 186 L.Ed.2d at 28, King asks us to invalidate instead the search and seizure of his DNA under Article 26 of the Maryland Declaration of Rights. He contends that the collection of DNA samples from all individuals arrested for a crime listed under § 2–504(a)(3) of the Public Safety Article violates Article 26 by authorizing suspicionless general searches. Because King asserts that the

collection of his DNA violated Article 26, he urges this Court to suppress the DNA evidence.

Article 26 provides:

That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted.

Although Article 26 pre-dates the Fourth Amendment, *Gahan v. State*, 290 Md. 310, 319, 430 A.2d 49, 53 (1981), both provisions "grew out of the same historical background," *Givner v. State*, 210 Md. 484, 492, 124 A.2d 764, 768 (1956), and contain similar verbiage. *Gahan*, 290 Md. at 319, 430 A.2d at 54 (quoting A. Niles, Maryland Constitutional Law 50 (1915)); *see Liichow v. State*, 288 Md. 502, 509 n. 1, 419 A.2d 1041, 1044 n. 1 (1980) (noting that, like the Fourth Amendment, Article 26 "prohibits unreasonable search and seizures").

As King acknowledges, this Court has interpreted historically Article 26 *in pari materia* with the Fourth Amendment of the U.S. Constitution. *See, e.g., Parker v. State*, 402 Md. 372, 386, 396, 400–01, 936 A.2d 862, 870, 876, 878–79 (2007); *Byndloss v. State*, 391 Md. 462, 465 n. 1, 893 A.2d 1119, 1121 n. 1 (2006); *Fitzgerald v. State*, 384 Md. 484, 506, 864 A.2d 1006, 1019 (2004); *Gahan*, 290 Md. at 319, 430 A.2d at 54. *See also* Irma S. Raker, *Fourth Amendment and Independent State Grounds*, 77 Miss. L.J. 401, 403 (2007) ("With respect to Article 26, Maryland has not resolved Fourth Amendment issues on independent state grounds and continues to interpret Article 26 in pari materia with the United States Supreme Court's interpretation of the Fourth Amendment."). Despite our long-standing practice of interpreting Article 26 consistent with the Fourth Amendment, we have noted repeatedly also that each provision is independent, and that " 'a violation of one is not necessarily a violation of the other.' " *Gahan*, 290 Md. at 322, 430 A.2d at 55 (quoting *Attorney*

*General v. Waldron,* 289 Md. 683, 714, 426 A.2d 929, 946 (1981)); *see Parker v. State,* 402 Md. at 400–01, 936 A.2d at 879; *Davis v. State,* 383 Md. 394, 408, 859 A.2d 1112, 1120 (2004) (noting that Article 26 of the Maryland Declaration of Rights "is subject to a like, but not identical, interpretation" of the Fourth Amendment).

Although we have asserted that Article 26 may have a meaning independent of the Fourth Amendment, we have not held, to date, that it provides greater protection against state searches than its federal kin. Rather, we rejected uniformly such assertions. *See, e.g., Jones v. State,* 407 Md. 33, 46 n. 2, 962 A.2d 393, 400 n. 2 (2008) (noting that, because Article 26 is construed *in pari materia* with the Fourth Amendment, the Court's conclusion that "petitioner's Fourth Amendment rights were not violated during the detectives' investigation and subsequent search and seizure of [his] rental car, applies equally to petitioner's Article 26 claim"); *Scott v. State,* 366 Md. 121, 139, 782 A.2d 862, 873 (2001) (holding that a consent search commenced after "knock and talk" was neither a violation of the Fourth Amendment, nor, therefore, Article 26); *City of Annapolis v. United Food & Commercial Workers, Local 400,* 317 Md. 544, 566 n. 4, 565 A.2d 672, 683 n. 4 (1989) (declining to provide greater protection under Article 26 to government employees from random, suspicionless drug testing than the Fourth Amendment). *See also Padilla v. State,* 180 Md.App. 210, 227, 949 A.2d 68, 78 (2008) ("[D]espite the caveat of independence, the Court of Appeals has never held that Article 26 provides greater protection from State interference than its federal counterpart.").

Even if we were to depart in this case from our traditional practice of construing Article 26 consistent with the Fourth Amendment, never have we concluded explicitly and with clarity that an exclusionary rule, permitting the suppression of King's DNA evidence as a remedy for an alleged Article 26 violation, exists under our state constitutional law. *Meisinger v. State,* 155 Md. 195, 199, 141 A. 536, 538 (1928) ("[W]hen evidence offered in a criminal trial is otherwise admissible, it will not be rejected because of the manner of its obten-

tion...."); *see also Brown v. State,* 397 Md. 89, 98, 916 A.2d 245, 251 (2007) (citing *Fitzgerald v. State,* 384 Md. 484, 507, 864 A.2d 1006, 1019 (2004) (citing *Chu v. Anne Arundel County,* 311 Md. 673, 537 A.2d 250 (1988))) (noting the absence of a Maryland exclusionary rule); *see also Padilla,* 180 Md. App. at 232–37, 949 A.2d at 82–84 (describing the history of the exclusionary rule in Maryland and concluding that *Meisinger* remains good law); Raker, *supra,* at 411 ("[T]oday, in Maryland, other than the federal exclusionary rule, the [C]ourt [of Appeals] has not recognized an exclusionary rule for illegally seized evidence under Article 26."). Thus, to grant King the relief he seeks under Article 26 would require both a departure from our traditional interpretation of the bounds of Article 26, as well as the adoption of a state law-based exclusionary rule.

We shall not do either in the present case. As this Court noted previously, in construing Article 26, decisions of the Supreme Court are "entitled to great respect." *Richardson v. McGriff,* 361 Md. 437, 453, 762 A.2d 48, 56 (2000); *see also Gadson v. State,* 341 Md. 1, 8 n. 3, 668 A.2d 22, 26 n. 3 (1995); *Gahan,* 290 Md. at 320, 430 A.2d at 54. Thus, because we determine that a construction of Article 26 *in pari materia* with the Fourth Amendment is appropriate, we conclude that the Act does not violate King's rights under Article 26. *See King,* —— U.S. at ——, 133 S.Ct. at 1980, 186 L.Ed.2d at 28 (determining that the Act does not violate King's Fourth Amendment rights). We need not confront, therefore, whether a separate state constitutional exclusionary rule exists for a violation of Article 26.

III. The Trial Judge Did Not Shift Erroneously The Burden Of Proof To King And, Even If A Statutory Violation Were Proven, There Is No Reversible Error On This Record.

Next, we address the admissibility of a DNA database match stemming from a DNA sample obtained pursuant to a warrant and court order, which were issued upon the sole basis of an initial DNA database match stemming from an

initial DNA sample collected allegedly pursuant to the Act. The issue we address today concerns the proper procedures for challenging this evidence. In the present case, King asserts that the trial court erred by assuming the State complied with the technical requirements for collecting King's DNA and placing the burden on King to prove otherwise. At the motions hearing, King contended specifically that (1) King's DNA sample was never taken actually in April of 2009;[3] (2) the alleged collector was not authorized pursuant to § 2–504(c) to collect King's DNA sample;[4] and (3) King did not receive notice pursuant to § 2–504(a)(3)(ii) regarding potential expungement of the DNA record.[5]

We disagree with King's contention and conclude that, regardless of the "disguise" employed to characterize King's challenge,[6] the prima facie burden remains on the defendant to advance evidence of how the State failed to comply with the Act. Because King failed to point to any relevant evidence

---

**3.** Although this specific challenge is mentioned briefly in the "Statement of Facts" in Appellant's Brief, there is no other mention of this challenge in the brief and, thus, we do not address it here.

**4.** Section 2–504(c) provides,
A DNA sample shall be collected by an individual who is:
(1) designated by the Director; and
(2) trained in the collection procedures that the Crime Laboratory uses.
Md. Code (2003, 2011 Repl. Vol.), Pub. Safety Art., § 2–504(c).

**5.** Section 2–504(a)(3)(ii) provides, "At the time of collection of the DNA sample under this paragraph, the individual from whom a sample is collected shall be given notice that the DNA record may be expunged and the DNA sample destroyed in accordance with § 2–511 of this subtitle." Md. Code (2003, 2011 Repl. Vol.), Pub. Safety Art., § 2–504(a)(3)(ii).

**6.** The "disguise" analogy, drawn from Judge Moylan's opinion in *Fitzgerald v. State*, 153 Md.App. 601, 648, 837 A.2d 989, 1015 (2003), *aff'd*, 384 Md. 484, 864 A.2d 1006 (2004), is apt here to refer to the apparent confusion in characterizing the basis or nature of King's motion to suppress the DNA database match. Defense trial counsel disputed the trial judge's characterization of King's argument as a *Franks* challenge, but agreed that the 26 March 2010 hearing was not a discovery motion, a chain of custody hearing, or a motion in limine.

supporting his claims of statutory violations, he failed to meet his burden and the trial court denied properly the motion to suppress the evidence. Furthermore, even assuming a violation of the Act had been advanced properly (which we do not find here), there is no reversible error. In the latter regard, which party shouldered properly the burden to prove whether the State complied with the Act is an irrelevant point ultimately because we find an exclusionary rule inapplicable to the alleged violations of the DNA Collection Act.

A. The Trial Court Placed Properly
The Initial Burden On King.

We begin by addressing the proper procedure to challenge the DNA database match evidence in this and similar future cases. In the present case, the trial court and the parties had different views apparently of the proper characterization of King's challenge. The trial judge and the State characterized King's argument as challenging the basis of the warrant. The probable cause for the warrant was established in the affidavit by a single statement that King's DNA was collected pursuant to the Act. Because King argued that his DNA was collected illegally, the trial court framed his argument as challenging the veracity of the statement in the affidavit under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

Although King could have made such an argument, he asserts that he never did so and, in fact, that he disputed the State's and the trial court's characterizing his challenge in that manner at the motions hearing. King's challenge as mounted by him, albeit not entirely clear, focused apparently on the illegality of the probable cause underlying the warrant. He contended that the DNA database match stemming from the second DNA sample, collected pursuant to the warrant and court order, should be suppressed on the grounds that the initial DNA sample was collected in violation of the Act. This argument is recognized more properly as a corollary of the fruit of the poisonous tree doctrine. Under the traditional version of this doctrine, "evidence tainted by Fourth Amendment violations may not be used directly or indirectly against

the accused." *Miles v. State*, 365 Md. 488, 520, 781 A.2d 787, 805 (2001) (citing *Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307, 312 (1939)). The corollary of this doctrine recognizes that evidence obtained in violation of a statute subject to the exclusionary rule is tainted and should be suppressed.

▬▬▬ The significance of the difference in characterizing King's challenge as one under *Franks* or as one under the fruit of the poisonous tree doctrine is the standard of proof applicable at the hearing. As the trial court stated correctly, in the context of a *Franks* challenge,

> If the Defendant seeks to scrutinize a warrant and its application beyond the four corners doctrine, it is his burden to demonstrate by a preponderance of the evidence that the supporting warrant affidavit is tainted by allegations of deliberate falsehood or with reckless disregard for the truth.

App. 6 (citing *Fitzgerald*, 153 Md.App. at 644, 837 A.2d at 1013). Under the fruit of the poisonous tree doctrine, the required standard of proof differs:

> Specifically, '[a] defendant seeking shelter under the umbrella of the 'fruit of the poisonous tree' doctrine has to prove each of two propositions: 1) the primary illegality, to wit, that the tree was poisonous; and 2) the cause and effect relationship between the primary illegality and the evidence in issue, to wit, that the evidence was, indeed, the identifiable fruit of that particular tree.'

*Cox v. State*, 421 Md. 630, 651–52, 28 A.3d 687, 699 (2011) (quoting *Gibson v. State*, 138 Md.App. 399, 404, 771 A.2d 536, 539 (2001)). *See also Miles v. State*, 365 Md. 488, 520, 781 A.2d 787, 805 (2001) (noting that "[t]he United States Court of Appeals for the Fourth Circuit has adopted the procedure of having a 'taint hearing' regarding evidence resulting from a wiretap violation wherein the claimant has the initial burden of establishing a taint and the government may demonstrate that the taint was purged") (citing *United States v. Apple*, 915 F.2d 899, 906 (4th Cir.1990)).

██ Notably, however, despite the different standards of proof, the initial burden of production remains on the challenger in both instances. Regardless of the "disguise" used to characterize the grounds for King's challenge—whether a *Franks* hearing to challenge the truth of the statement in the warrant or a suppression hearing to challenge the legality of the evidence underlying the warrant—King bore the initial burden to produce some relevant evidence. Therefore, the trial court did not shift erroneously the burden to King at the motions hearing.

██ King failed to meet his burden, regardless of the label given his challenge. Reviewing the evidence under the disguise of a *Franks* challenge, we would agree with the trial court that King failed to meet his prima facie burden of production. As the Court of Special Appeals noted in *Herbert v. State*, 136 Md.App. 458, 472 n. 2, 766 A.2d 190, 197 n. 2 (2001),

> What the appellant thought he was doing is by no means clear. One does not just stumble into a *Franks* hearing casually, let alone inadvertently. That is why *Franks* makes repeated references to the fact that "a sensible threshold showing is required," 438 U.S. at 170, 98 S.Ct. 2674, and that the "requirement of a substantial preliminary showing should suffice to prevent the misuse of a veracity hearing," *id.* The appellant here did not even pause at the threshold.

*Id.* Because King's actual argument did not focus on the warrant,[7] his argument regarding the legality of the collection arguably did not even fall under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Even were we to reframe his argument as falling under *Franks*, King failed to

---

7. A *Franks* challenge may have been the appropriate avenue to challenge the State's assertion that King's DNA sample was taken in April of 2009. Because King's argument that his DNA sample was never taken actually goes to the heart of the truth of the statement in the warrant's affidavit, King could have challenged the warrant under *Franks*. As noted earlier, it does not appear to us that he traveled that path.

point to any evidence that suggested remotely the affidavit was tainted by deliberate falsehood or with reckless disregard for the truth. *See Herbert,* 136 Md.App. at 472 n. 2, 766 A.2d at 197 n. 2 (citing *Franks,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667).

Secondly, when reviewing the evidence under the fruit of the poisonous tree doctrine, we conclude no differently and find likewise that King failed to meet his burden. King failed to adduce any evidence to demonstrate that the State violated actually the Act in this case. Admittedly, proving a negative is an arduous task, but it certainly is a plausible one here, with adequate discovery.

The record suggests that trial defense counsel recognized the plausibility of this burden when he filed a motion seeking a continuance of the motions hearing so that he could have sufficient time to prepare and serve "various subpoenas." After acknowledging the need for "proper preparation," defense counsel subpoenaed ultimately only two witnesses: Ms. Michelle Groves, the custodian of records at the Maryland State Police Forensics Division, and Ms. M.I. Jenkins, the collecting agent who obtained King's initial DNA sample.

At the 26 March 2010 hearing on the suppression motion, for some reason, defense counsel called as a witness only Ms. Groves. Through questioning Ms. Groves, defense counsel established only that she had no records documenting (1) whether King received notification of the expungement provisions or (2) the training and qualifications of the collecting agent. Defense counsel argued that, because Ms. Groves lacked these records, there was no compliance. A crucial step is missing in the defense's syllogism: whether Ms. Groves should have had such records. Without that evidence, the fact that Ms. Groves did not have these records means nothing necessarily.[8]

---

8. During cross-examination, when the prosecutor sought to question Ms. Groves whether she kept such records in the ordinary course of business, defense counsel objected on the grounds of relevancy. After

Rather than focusing on whether the Police Forensic Sciences Division had *records* of the collecting agent's training and whether King received notice of the Act's expungement provisions, defense counsel could have sought to establish whether violations occurred actually. To do this, the collecting agent, M.I. Jenkins, would seem to be the more appropriate witness to establish the statutory violations alleged here. As the State noted at oral argument, Ms. Groves appears to have been the wrong witness to establish the statutory violations alleged by defense counsel in this case. We conclude that King failed to produce any, let alone sufficient evidence, of the illegality of the collection of King's initial DNA sample.

### B. Even If The State Violated The Act, Suppression Is Not The Appropriate Remedy For A Statutory Violation Of The Act.

Even if we were to assume that the State violated the technical requirements of the sections of the Act at issue in its initial collection of King's DNA sample, suppression would not be the proper remedy for such violations as alleged and, therefore, the trial judge denied properly the motion to suppress the DNA database match. The exclusionary rule, which is recognized generally as a "judicially imposed sanction for violations of the Fourth Amendment," does not apply automatically to every violation. *Myers v. State*, 395 Md. 261, 282, 909 A.2d 1048, 1060 (2006). "[T]he application of [the exclusionary rule] is appropriate when the Constitution or a statute requires it." *United States v. Abdi*, 463 F.3d 547, 555 (6th Cir.2006). Thus, we must analyze in turn whether the Constitution or the Act requires suppression of a DNA database match when the State violates technical statutory requirements for the collection of the arrestee's DNA such as asserted here.

---

the trial judge overruled the objection, Ms. Groves answered a series of questions and explained that the Police Forensic Sciences Division does not retain, as a regular course of business, any kind of documentation concerning the training and qualifications of the collecting agent or concerning the notice of rights given to an arrestee.

First, we ask whether a finding of a statutory violation of the Act would alter the Supreme Court's conclusion in *Maryland v. King*, —— U.S. ——, 133 S.Ct. 1958, 186 L.Ed.2d 1 (2013). In *King*, the Supreme Court concluded,

> In light of the scientific and statutory safeguards [of the Act], once respondent's DNA was *lawfully collected* the STR analysis of respondent's DNA pursuant to CODIS procedures did not amount to a significant invasion of privacy that would render the DNA identification impermissible under the Fourth Amendment.

*Id.* at ——, 133 S.Ct. at 1980, 186 L.Ed.2d at 28 (emphasis added). The question we address is whether, assuming *arguendo* that King's DNA was collected unlawfully, the unlawful collection renders the DNA database match an impermissible search under the Fourth Amendment.

The Supreme Court of the United States has held that violations of state statutes do not affect the Fourth Amendment analysis. *Virginia v. Moore*, 553 U.S. 164, 177–78, 128 S.Ct. 1598, 1608, 170 L.Ed.2d 559 (2008). *See also McFarlin v. State*, 409 Md. 391, 410, 975 A.2d 862, 873 (2009) ("a violation of a State regulation does not trigger the exclusionary rule") (internal quotation marks and citation omitted); *Allen v. State*, 85 Md.App. 657, 673, 584 A.2d 1279, 1286 (1991) ("Mere noncompliance with these [statutory] provisions has no Fourth Amendment significance."). As the Supreme Court stated in *Virginia v. Moore*,

> We thought it obvious that the Fourth Amendment's meaning did not change with local law enforcement practices— even practices set by rule. While those practices "vary from place to place and from time to time," *Fourth Amendment protections are not "so variable" and cannot "be made to turn upon such trivialities."*

*Moore*, 553 U.S. at 172, 128 S.Ct. at 1605, 170 L.Ed.2d 559 (2008) (quoting *Whren v. United States*, 517 U.S. 806, 815, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)) (emphasis added).

The alleged technical violations in this case epitomize the reason state statutory violations have no Fourth Amendment

significance. Every state has adopted a statute for DNA collection at this point. *See King,* —— U.S. at ——, 133 S.Ct. at 1968, 186 L.Ed.2d at 6 (noting that "[a]ll 50 States require the collection of DNA from felony convicts"). The systems are operated and maintained with slightly different particulars, such as what charges justify a compelled DNA sample and what technical protocols are required for the collection. *Id. See generally* Robin Cheryl Miller, *Validity, construction, and operation of state DNA database statutes,* 76 A.L.R.5th 239 (2000) (summarizing case law and statutes on the various particulars of the DNA Collection systems across the nation). Despite these interstate variations, the requisites for compliance with the Fourth Amendment do not vary, but rather remain constant across the nation. *See Moore,* 553 U.S. at 172, 128 S.Ct. at 1605, 170 L.Ed.2d 559 (2008).

Although some other circumstances may present an opportunity to find that a violation of the Act amounted to an unreasonable search in violation of the Fourth Amendment, this case is certainly not that one. The question is not whether the Act was violated, but whether the alleged statutory violation could amount to a Fourth Amendment violation in its own right. Were the Act's technical protocols for DNA collection violated, the collection would remain a reasonable search nonetheless. Therefore, the statutory violations alleged by King, assuming *arguendo* they occurred, do not alter the Supreme Court's holding in *King.* The initial collection of King's DNA—whether pursuant to the Act's technical requirements or not—was constitutional.

 In the absence of a Fourth Amendment violation, we must ask next whether the statute demands exclusion as a remedy for a statutory violation. We have not addressed this issue before, but we find the analytical framework used by other jurisdictions and Maryland's intermediate appellate court instructive. As the Court of Special Appeals stated, "One may not wish an exclusionary rule into being by waiving a magic wand. It is something that must be deliberately and explicitly created to cover a given type of violation." *Sun Kin*

*Chan v. State*, 78 Md.App. 287, 311, 552 A.2d 1351, 1363 (1989). Accordingly, where the Legislature does not provide explicitly for a suppression remedy, courts generally should not read one into the statute.[9] *See, e.g., United States v. Clenney*, 631 F.3d 658, 667 (4th Cir.2011); *United States v. Abdi*, 463 F.3d 547, 556 (6th Cir.2006) (citing *United States v. Giordano*, 416 U.S. 505, 524, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), for the proposition that "in the absence of Fourth Amendment violation, suppression remedy depends upon provisions of the statute"); *Dorsey v. State*, 185 Md.App. 82, 122, 968 A.2d 654, 677 (2009) ("Of import here, the Act does not provide for an exclusionary rule as a remedy, and we shall not infer a remedy that the General Assembly did not authorize.").

Illustrative of this general approach is the Court of Special Appeals's analytical framework in *Upshur v. State*, 208 Md. App. 383, 56 A.3d 620 (2012), *cert. denied*, 430 Md. 646, 62 A.3d 732 (2013). In *Upshur*, the Court of Special Appeals analyzed whether a violation of the Stored Communications Act "should lead to the exclusion of evidence obtained by such violation." *Id.*, 208 Md.App. at 398, 56 A.3d at 629. Upshur argued that "the very existence of the Stored Communications Act indicates that the Maryland legislature intended to provide citizens with greater protection of privacy in the information . . . and we should infer a legislative intent to exclude evidence obtained in violation of the act." *Id.* The Court of Special Appeals rejected correctly this argument, reasoning that "[t]he legislature . . . is capable of expressly providing a

---

9. We acknowledge that courts have recognized an implicit suppression remedy for certain statutory violations on limited occasions. *See, e.g., Sanchez–Llamas v. Oregon*, 548 U.S. 331, 348–49, 126 S.Ct. 2669, 2681, 165 L.Ed.2d 557 (2006) (noting that the Supreme Court has only recognized an implicit suppression remedy when "the excluded evidence arose directly out of statutory violations that implicated important Fourth and Fifth Amendment interests"). *See generally* WAYNE R. LAFAVE, SEARCH & SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 1.5(b) (2011), available at Westlaw (discussing the "somewhat ambiguous" nature of the substantial rights approach in determining whether a state statutory violation demands the application of an implicit exclusionary rule). This Court has never found, however, an implicit exclusionary rule and we decline to do so here.

suppression remedy when it intends to do so, as it did when it included a suppression remedy in the Wiretapping and Electronic Surveillance Act, enacted prior to the Stored Communications Act." *Id. Upshur* held that, even where a statute is enacted by the Maryland Legislature for the purpose of providing citizens greater privacy protections, the court "will not create a suppression remedy ... where the legislature did not create one at the time it enacted the statute." *Id.*

No explicit exclusionary provision exists in the DNA Collection Act. *See* Md. Code (2003, 2011 Repl. Vol.), Pub. Safety Art., § 2–501 et seq. The Act provides criminal sanctions for certain, limited prohibited acts. *See* Md. Code (2003, 2011 Repl. Vol.), Pub. Safety Art., § 2–512 (prescribing criminal sanctions for disclosing DNA information to unauthorized persons, obtaining DNA information from the database system without authorization, testing a DNA sample for information unrelated to identification, and failing to destroy a DNA sample in specified circumstances). For the remaining majority of its provisions, such as those alleged to be violated in this case, the Act is silent on any remedy for a violation.

This silence is in stark contrast to the explicit provisions of other statutes, such as the explicit statutory exclusionary provision in the Maryland Wiretapping and Electronic Surveillance Act, Maryland Code, Section 10–401 et seq. of the Courts and Judicial Proceedings Article (1977, 2013 Repl. Vol.).[10] As the Court of Special Appeals noted in *Upshur*, although the Maryland Legislature could have created a statutory exclusionary provision in the DNA Collection Act, as it did in the Wiretapping Statute, it chose not to do so. *See*

---

**10.** The Maryland Wiretapping Statute's statutory exclusionary provision provides, in pertinent part,

[W]henever any wire, oral, or electronic communication has been intercepted, no part of the contents of the communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of this State, or a political subdivision thereof if the disclosure of that information would be in violation of this subtitle.

Md.Code Ann., Cts. & Jud. Proc. § 10–405(a) (1957, 2013 Repl. Vol.).

*Upshur,* 208 Md.App. at 398, 56 A.3d at 629. Accordingly, we may assume that the Legislature did not envision suppression as a remedy for a statutory violation of the DNA Collection Act. *Id.*

Because "the exclusionary rule is not a remedy [the courts] apply lightly." *Sanchez–Llamas v. Oregon,* 548 U.S. 331, 347, 126 S.Ct. 2669, 2680, 165 L.Ed.2d 557 (2006), and the Legislature made no indication that suppression is the proper remedy for a violation of the DNA Collection Act, we decline to find any suppression remedy here. Thus, even if a State violation of the Act of the caliber alleged here had been proven, which we find no evidence of, the trial court denied properly King's motion to suppress the DNA database match and there is no reversible error.

**JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY AFFIRMED; COSTS TO BE PAID BY PETITIONER.**

BELL, C.J., (ret.) dissents.

BELL, C.J., (ret.) dissenting.

I dissent. It is my belief that the conclusion this Court reached applying the Fourth Amendment is equally supported by application of Article 26 of the Maryland Declaration of Rights, which we determined, at that time, to be a moot argument. Accordingly, I would re-affirm our judgment on that State Law ground.