Alexander Dejarnette v. State of Maryland, No. 41, September Term, 2021

**EVIDENTIARY TEST OF BREATH FOR ALCOHOL – CODE OF MARYLAND REGULATIONS 10.35.02.08G – TWENTY-MINUTE OBSERVATION PERIOD – COMPLIANCE – ADMISSIBILITY –** Court of Appeals held that plain language of relevant statutes was clear and that statutes do not provide that breath test results are inadmissible as result of noncompliance with twenty-minute observation period set forth in Code of Maryland Regulations ("COMAR") 10.35.02.08G. COMAR 10.35.02.08G does not contain exclusionary provision for alleged noncompliance with observation period. Court of Appeals held that alleged compliance or noncompliance with twenty-minute observation period goes to weight to be given to breath test results, not to admissibility of results.

Court of Appeals concluded that record in case supported factual finding that officers complied with twenty-minute observation period before administration of breath test. And, Court of Appeals determined that trial court made findings on record that officers complied with twenty-minute observation period set forth in COMAR 10.35.02.08G.

Circuit Court for Somerset County
Case No. C-19-CR-19-000156
Argued: February 8, 2022

IN THE COURT OF APPEALS

OF MARYLAND

No. 41

September Term, 2021

_____

ALEXANDER DEJARNETTE

v.

STATE OF MARYLAND

_____

Getty, C.J.
*McDonald
Watts
Hotten
Booth
Biran
Harrell, Jr., Glenn T. (Senior
Judge, Specially Assigned),

JJ.

_____

Opinion by Watts, J.

_____

Filed: March 25, 2022

*McDonald, J., now a Senior Judge, participated in the hearing and conference of this case while an active member of this Court.  After being recalled pursuant to Md. Const., Art. IV, § 3A, he also participated in the decision and adoption of this opinion.

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In Maryland, when a law enforcement officer has reason to believe that the driver of a motor vehicle is under the influence of alcohol, the officer may ask the driver to take a breath test. Under Md. Code Ann., Transp. (1977, 2012 Repl. Vol., 2018 Supp.) ("TR") § 16-205.1, sometimes called "the implied consent, administrative per se law[,]" a driver is deemed to have consented to take a breath test to determine alcohol concentration if stopped by a law enforcement officer with reasonable grounds to believe that the person has been driving under the influence of alcohol. Motor Vehicle Admin. v. Deering, 438 Md. 611, 612, 615, 92 A.3d 495, 496, 498 (2014) (internal quotation marks omitted). There are regulations governing the procedures for administering a breath test for alcohol. See Code of Maryland Regulations ("COMAR") 10.35.02.08.[1] Among other things, COMAR 10.35.02.08G provides that an individual who is to be given a breath test must be observed for at least twenty minutes before the sample is taken. The purpose of the observation period is to help ensure that the individual does not engage in behavior that could potentially skew the results of the test, either higher or lower than they should be.

In this case, the State, Respondent, charged Alexander Dejarnette, Petitioner, with four counts related to driving under the influence of alcohol—namely, negligent driving, driving under the influence of alcohol, driving under the influence of alcohol per se, and driving while impaired. Prior to trial in the Circuit Court for Somerset County, Dejarnette filed a motion *in limine* to exclude the results of a breath test, arguing that the twenty-

---

[1]COMAR 10.35.02.08 became effective on October 4, 2010. See COMAR 10.35.02.9999. It is part of the "Postmortem Examiners Commission" subtitle of the Maryland Department of Health Title, located at Title 10 of COMAR.

minute observation period set forth in COMAR 10.35.02.08G had not been complied with. At the end of a motions hearing, the circuit court denied the motion. A jury acquitted Dejarnette of negligent driving and driving under the influence of alcohol, but convicted him of driving under the influence of alcohol per se and driving while impaired by alcohol. The circuit court sentenced Dejarnette to one year of imprisonment, with all but ten days suspended, and one year of supervised probation, and ordered him to pay a $250 fine and $145 in court costs. Dejarnette appealed, contending that the circuit court erred in admitting the results of the breath test. The Court of Special Appeals held that the circuit court did not err and affirmed the circuit court's judgment. See Dejarnette v. State, 251 Md. App. 467, 469, 254 A.3d 524, 525 (2021). Dejarnette filed a petition for a writ of *certiorari*, which we granted. See Dejarnette v. State, 476 Md. 264, 261 A.3d 240 (2021).

In this case, we consider whether compliance with the twenty-minute observation period set forth in COMAR 10.35.02.08G is required for the results of a breath test to be admissible or whether alleged noncompliance with the observation period goes to the weight to be afforded the evidence by the trier of fact. We also consider whether the record in this case supports a finding that the officers complied with the observation period and whether the circuit court failed to make such a finding.

We hold that the plain language of the relevant statutes is clear and that the statutes do not provide that noncompliance with the twenty-minute observation period set forth in COMAR 10.35.02.08G results in the inadmissibility of evidence of breath test results. The COMAR regulation itself does not contain an exclusionary provision for alleged noncompliance with the observation period. We hold that the alleged compliance or

noncompliance with the twenty-minute observation period goes to the weight to be given to breath test results, *i.e.*, the weight of the evidence, not the admissibility. We also conclude that, in this case, the record supports a finding that the officers complied with the twenty-minute observation period. In addition, we determine that the circuit court made findings on the record that the officers complied with the twenty-minute observation period set forth in COMAR 10.35.02.08G.

### BACKGROUND

In the early morning of April 6, 2019, Maryland State Police Trooper Derek Brown, who was on patrol, observed a vehicle move to the shoulder without using a signal and then jerk back into the lane in which it had been traveling. Trooper Brown saw the same vehicle again move completely onto the shoulder of the road and then jerk back into the lane in front of his car, which caused him to brake suddenly. At 1:59 a.m., Trooper Brown stopped the vehicle, which was being driven by Dejarnette. Immediately upon contact with Dejarnette, Trooper Brown smelled the odor of alcohol emanating from the vehicle and noticed that Dejarnette's eyes were bloodshot and glassy. Trooper Brown advised Dejarnette of the reason for the stop and asked him to step out of the vehicle to perform field sobriety tests. Trooper Brown smelled alcohol on Dejarnette's breath after he exited the vehicle. Dejarnette admitted to having had a couple of drinks hours earlier. Trooper Brown conducted field sobriety tests and determined that Dejarnette exhibited numerous signs of being under the influence of alcohol.

At 2:12 a.m., Trooper Brown arrested Dejarnette and transported him to Maryland State Police Barrack X in Princess Anne. Trooper Brown read the DR-15 Advice of Rights

form[2] to Dejarnette and at approximately 2:37 a.m., Dejarnette agreed to submit to an alcohol concentration test, *i.e.*, a breath test. Another officer, Sergeant George Todd, administered the breath test. Dejarnette blew into the breathalyzer twice, at 2:43 a.m. and 2:45 a.m., forty-four and forty-six minutes, respectively, after Trooper Brown stopped his vehicle and thirty-one and thirty-three minutes, respectively, after he was arrested. Both times, the breath test detected an alcohol concentration of .094. Trooper Brown and Sergeant Todd signed and completed a "State of Maryland Notification to Defendant of Result of Test for Alcohol Concentration" form, which stated that Dejarnette was arrested at 2:12 a.m. on April 6, 2019, that the breath specimen was collected at 2:43 a.m. that morning, and that the breath specimen was found to contain an alcohol concentration of .09 grams of alcohol per 210 liters of breath.[3]

## Motion *in Limine* and Motions Hearing

Prior to trial, Dejarnette filed a motion *in limine*, seeking to exclude the results of the breath test, arguing that the officers did not comply with COMAR 10.35.02.08G, which requires a twenty-minute period of pre-test observation. Dejarnette argued that the failure to follow the requirements of the regulation called the validity of the breath test results into

---

[2]The DR-15 Advice of Rights form is a form created by the Motor Vehicle Administration that officers use to advise detained drivers of options under the implied consent, administrative per se law and of possible administrative sanctions and consequences for the refusal to take a test or for test results that indicate certain levels of alcohol concentration. See Motor Vehicle Admin. v. Krafft, 452 Md. 589, 594, 158 A.3d 539, 542 (2017).

[3]Under Md. Code Ann., Cts. & Jud. Proc. (1974, 2013 Repl. Vol., 2018 Supp.) § 10-307(g), a person with an alcohol concentration of .08 and above, as determined by a blood or breath test, "shall be considered under the influence of alcohol per se[.]"

question and that the admission of the breath test results into evidence would violate due process.

On December 18, 2019, the circuit court held a hearing on the motion. The State called two witnesses, Trooper Brown, who conducted the traffic stop, and Sergeant Todd, who conducted the breath test. Trooper Brown testified that on April 6, 2019, he was working the night shift and at 1:59 a.m., he conducted a traffic stop of a vehicle that Dejarnette was driving. At 2:12 a.m., Trooper Brown arrested Dejarnette for suspected driving under the influence of alcohol. After the arrest, Trooper Brown searched Dejarnette's mouth and pockets. Trooper Brown cuffed Dejarnette's hands behind his back and placed him in the front passenger seat of the police car.

Trooper Brown testified that he and Dejarnette arrived at the barrack at 2:21 a.m. The two were met by Sergeant Todd, the duty officer at the barrack. Trooper Brown conducted another search of Dejarnette in Sergeant Todd's presence in the hallway of the barrack. Trooper Brown did not find anything in Dejarnette's mouth, and Trooper Brown testified that he would have placed anything found in Dejarnette's pockets in a bag. Trooper Brown then escorted Dejarnette to a processing room down the hall. Trooper Brown described the processing room as a small room, approximately eight or ten feet by twelve or fourteen feet, with a desk and two chairs.

Trooper Brown testified that, between 2:21 and 2:37 a.m., he and Dejarnette were together for the entire time. Dejarnette was not handcuffed while sitting in the processing room. Trooper Brown read the DR-15 Advice of Rights form to Dejarnette, while Sergeant Todd was in and out of the processing room. At approximately 2:37 a.m., Dejarnette

- 5 -

agreed to submit to an alcohol concentration test. The breath test was given to Dejarnette by Sergeant Todd, in Trooper Brown's presence. The first result was at 2:43 a.m. and the second result was at 2:45 a.m. Trooper Brown testified that during the nine minutes between arresting Dejarnette and transporting him to the barrack, from 2:12 a.m. to 2:21 a.m., and while sitting "right next to" Dejarnette in the processing room at the barrack, Dejarnette did not have anything to eat or drink, did not put a mint in his mouth, and did not smoke, and that he did not hear or smell Dejarnette belch. Trooper Brown testified that he did not see Dejarnette make any hand movements while he was seated uncuffed in the processing room.

Sergeant Todd testified that on April 6, 2019, he was the duty officer at the barrack and performed the breath test with the intoximeter. Sergeant Todd testified that Trooper Brown brought Dejarnette into the barrack through the back door, where he met them. Sergeant Todd asked Dejarnette whether he had anything in his mouth and made Dejarnette open his mouth and stick out his tongue. Sergeant Todd looked in Dejarnette's mouth and watched as Trooper Brown searched Dejarnette. According to Sergeant Todd, he was in and out of the processing room once Dejarnette was placed in the room and was being read the DR-15 Advice of Rights form in the room. Sergeant Todd testified that when he was in the processing room, he did not recall observing any problems with Dejarnette, such as vomit on him. Sergeant Todd testified that Dejarnette "didn't have anything to drink the whole time [he] was with him or have anything in his mouth." Sergeant Todd explained that, "[e]ach time we do the breath test, I do the breath test twice, before he blows in the intoximeter, I have him open his mouth just so I can see if there's anything in his mouth."

Sergeant Todd testified that, if an individual belches or vomits and is given a breath test within twenty minutes, "it would show mouth alcohol and would void the test." Sergeant Todd testified that Dejarnette's breath test produced two results, at 2:43 a.m. and 2:45 a.m., and that both results were .094.

Dejarnette did not testify or call any witnesses. Dejarnette's counsel argued that "filling out paperwork" and reading the DR-15 Advice of Rights form should not count as "observation time" because the officer is not looking at the individual. The circuit court responded: "Well, wouldn't you agree . . . the officer at that time was from you to your client, and, certainly, he would have smelled vomit, smelled a burp, would have heard a burp, would have heard candy wrappers or something of that ilk and would have looked up?"

The prosecutor argued:

I think we're okay because we know he didn't have anything to eat or drink, we know he didn't have any foreign substance in the mouth, and we know that he didn't smoke, and that is what COMAR requires for the breath test. It doesn't say anything about belching. It doesn't say anything about burping.

In addition, the prosecutor argued that Dejarnette could raise issues concerning the observation period allegedly being lacking to the jury, but that the test should not be barred from admission into evidence. The circuit court stated that there was no "evidence that anyone observed [Dejarnette] belch or vomit or there was vomit on his clothes or that he had a stick of Trident that they missed[.]"

The circuit court found that Trooper Brown was able to observe Dejarnette during the drive to the barrack and while advising Dejarnette, stating:

- 7 -

[F]ollowing what COMAR intends, is that it's a 20-minute period before the test starts. That's clear. And, quite frankly, when you're arresting somebody, and you're putting them in the car, and you're driving, and you're taking them out of the car, and you search them again, and you are taking them down to the room, you know, presumably, they're in close proximity to you, they're not away from you, and you can observe whether they've belched or vomited, the same as you can in a room. But, quite frankly, I think best practices is that, you're in a room with them, as the trooper said, from as close as you were today with your client, and you're able to be close enough to smell, to touch, if necessary, if you suspect there's something in their mouth, to see, all of your tactile senses are in such a close range, that you can make those observations.

The circuit court determined:

Trooper Brown, no dispute whatsoever, was with him the entire time between 2:21 and 2:43. Sergeant Todd was in there. And he's as honest as the day is long, and he said, I can't remember whether I was on the desk more than I was in the room. . . . But we do not have just one person observing during the 22 minutes, we've got two people, a combination of the two people, that are making observations. And neither one observed a belch, a vomit, a stick of gum, a cigarette, anything to the contrary that would invalidate the test, at least for the testimony I've heard under 10.35.02.08G.

The circuit court concluded that the requirements of the regulation went to weight rather than the admissibility of the breath test, and referred to the pattern jury instruction that allows the jury to "disregard" the test result if it believes that the test was not administered properly, stating:

Because, obviously, the jury instruction for the test is that they can disregard the test if they believe that it was not administered properly. And I think that's why it's in the jury instruction specifically about weight. Because the jury can say, you know, no offense to Trooper Brown and [Sergeant] Todd, but I just don't think they did it right. And, therefore, I'm not going to give the test any weight under the jury instruction.

The circuit court denied the motion *in limine*.

- 8 -

**Trial**

A jury trial occurred on January 7, 2020. At trial, Dejarnette's counsel raised the issue of the observation time and the accuracy of the breath test results on several occasions. During opening statements, Dejarnette's counsel stated: "I'm going to ask you to pay careful attention to the testimony you're going to hear with regards to the procedures and policies that need to be followed in order to ensure that that test result is accurate." When Trooper Brown testified that the DR-15 Advice of Rights form advises an individual about "[t]he periods of suspension on his license and whether or not he wants to take a breath test[,]" Dejarnette's counsel objected on the "[g]rounds previously registered[.]" The circuit court overruled the objection and granted the defense a continuing objection. During Sergeant Todd's testimony, the State moved to admit into evidence the intoximeter test strip from the breath test administered to Dejarnette and the State of Maryland Notification to Defendant of Result of Test for Alcohol Concentration form, which Sergeant Todd filled out with the test results. Dejarnette's counsel objected, and the circuit court overruled the objection and admitted the exhibits into evidence.

In instructing the jury, the circuit court gave the pattern instruction on driving under the influence of alcohol per se, see MPJI-Cr 4:10.3 (Driving Under the Influence of Alcohol Per Se), which included the following: "When deciding what weight, if any, to give to the test result, you may consider all of the evidence in the case, including evidence that tends to show the test result was inaccurate or unreliable."[4]

---

[4]In closing argument, Dejarnette's counsel argued that the twenty-minute

**Opinion of the Court of Special Appeals**

After being convicted, Dejarnette appealed.  On July 6, 2021, the Court of Special Appeals affirmed the circuit court's judgment.  See Dejarnette, 251 Md. App. at 469, 254 A.3d at 525.   The Court of Special Appeals held that the relevant statutes are "unambiguous" and do not "require compliance with the COMAR regulation twenty-minute observation period as a condition to the admissibility of evidence[.]"  Id. at 471, 254 A.3d at 526.  The Court of Special Appeals stated that, "[t]he COMAR regulation does not provide requirements for how an individual is to be observed, nor does it define 'observe.'"  Id. at 473, 254 A.3d at 527.  The Court of Special Appeals concluded that there is no exclusionary rule for a violation of a regulation, i.e., "that the violation of a State regulation does not trigger the exclusionary rule."  Id. at 475, 254 A.3d at 528 (cleaned up). The Court of Special Appeals held that compliance with the twenty-minute observation period goes to the weight of the breath test evidence, not admissibility.  See id. at 480, 254 A.3d at 532.

The Court of Special Appeals determined that compliance with the twenty-minute observation period requirement does not mean that an officer must look continuously at a suspected drunk driver for twenty minutes and instead an officer "may use numerous senses to observe an individual to ensure they do not eat, drink, smoke, or put something in their mouth."  Id. at 478, 254 A.3d at 530-31.  The Court of Special Appeals concluded that Dejarnette had failed to preserve the issue of whether the circuit court failed to find that

observation time was "important[,]" and he urged the jury to acquit because of, among other reasons, "the noncompliance with the procedures for the breathalyzer[.]"

the officers complied with the COMAR regulations by failing to object or raise the issue in the circuit court. Nonetheless, the Court of Special Appeals determined that the circuit court made explicit findings on the record that the officers adhered to the twenty-minute observation period. See id. at 479-80, 254 A.3d at 531. The Court of Special Appeals noted that "Dejarnette failed to offer any competent evidence that he drank, smoked, ate, or regurgitated during the observation period[,]" and explained that "[s]peculation that something could have occurred that would compromise the test is not compelling evidence that the test was unreliable." Id. at 481, 254 A.3d at 532.

## Petition for a Writ of *Certiorari*

On August 20, 2021, Dejarnette petitioned for a writ of *certiorari*, raising the following three issues:

> 1. Where Petitioner challenged the admissibility of a breath test on the grounds that the police failed to sufficiently observe him for the requisite period preceding the test, does the failure to comply with the observation period go to the admissibility of the breath test results rather than their weight?
>
>> a. Does the statutory and regulatory scheme necessitate excluding breath tests where the police fail to comply with the observation period?
>>
>> b. Do principles of evidentiary law—and overwhelming out-of-state authority—necessitate excluding breath tests where the police fail to comply with the observation period?
>
> 2. Did the Court of Special Appeals err in holding that the officers' testimony supported a finding of compliance with the observation period?
>
> 3. Did the Court of Special Appeals err in holding that the argument—that the trial court failed to make any finding regarding compliance—was not preserved and also failed on the merits?

- 11 -

On October 12, 2021, we granted the petition.  See Dejarnette, 476 Md. 264, 261 A.3d 240.

**STANDARD OF REVIEW**

In Brooks v. State, 439 Md. 698, 708, 98 A.3d 236, 241-42 (2014), we explained that the standard of review of an evidentiary ruling depends on whether the trial court's "ruling was based on a pure question of law, on a finding of fact, or on an evaluation of the admissibility of relevant evidence."  "Questions of law are reviewed without according the trial [court] any special deference; findings of fact are assessed under a 'clearly erroneous' standard; and an assessment of the admissibility of relevant evidence is reviewed under an abuse of discretion standard."  Id. at 708, 98 A.3d at 242 (citations omitted).

"The interpretation of a statute is a question of law that this Court reviews *de novo*."  Johnson v. State, 467 Md. 362, 371, 225 A.3d 44, 49 (2020).  We assume that the General Assembly's "intent is expressed in the statutory language and thus our statutory interpretation focuses primarily on the language of the statute to determine the purpose and intent of the General Assembly."  Id. at 371, 225 A.3d at 49-50 (cleaned up).  "If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written."  Rogers v. State, 468 Md. 1, 14, 226 A.3d 261, 269 (2020), cert. denied, ___ U.S. ___, 141 S. Ct. 1052 (2021) (citation omitted).  "In addition, we neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words that the General Assembly used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning."  Id. at 14, 226 A.3d at 269 (citation omitted).

**I.**

**The Parties' Contentions**

Dejarnette contends that, for the results of a breath test to be admissible, the State must establish that law enforcement officers complied with the twenty-minute observation period set forth in COMAR 10.35.02.08G. Dejarnette argues that the failure to comply with the twenty-minute observation period constitutes "compelling indicia of unreliability" of the results of a breath test and that lack of compliance with the observation period goes to the admissibility of the results. Dejarnette asserts that, under Maryland Rule 5-403 and out-of-State authority, breath test results must be excluded where there is a failure to comply with the observation period.

The State responds that the Court of Special Appeals was correct in holding that compliance with COMAR 10.35.02.08G's requirement of a twenty-minute observation period before administration of a breath test goes to the weight to be afforded to the results of a test, not admissibility. The State points out that, although the relevant statutes condition admissibility on compliance with statutory requirements, the statutes neither expressly nor impliedly require exclusion of breath test results for failure to comply with COMAR 10.35.02.08G. The State advises that COMAR 10.25.02.08G does not contain an exclusionary rule and that there is no exclusionary rule for violation of a regulation. The State maintains that a majority of other jurisdictions treat the issue as one of weight, not

---

[5]We consolidate into one issue the second and third questions raised by Dejarnette.

admissibility, and that the cases cited by Dejarnette have little or no analysis or are based on statutory schemes different from Maryland's and thus are not persuasive.

## Analysis

We begin by examining the relevant statutes. Dejarnette was charged with violations of TR §§ 21-901.1(b) (negligent driving), 21-902(a)(1)(i) (driving under the influence of alcohol), 21-902(a)(1)(ii) (driving under the influence of alcohol per se), and 21-902(b)(1)(i) (driving while impaired by alcohol), and convicted of the latter two offenses. Subtitle 3 of Title 10 of the Courts and Judicial Proceedings Article of the Code of Maryland governs the use of breath and blood tests to determine alcohol concentration, drugs, or controlled substances for certain offenses. Md. Code Ann., Cts. & Jud. Proc. (1974, 2013 Repl. Vol., 2018 Supp.) ("CJ") § 10-302 provides that, "[i]n a prosecution for a violation of law concerning a person who is driving . . . a vehicle in violation of . . . § 21-902 of the Transportation Article . . . , a test of the person's breath or blood may be administered for the purpose of determining alcohol concentration[.]"

CJ § 10-303(a)(2) requires that, "[f]or the purpose of a test for determining alcohol concentration, the specimen of breath or blood shall be taken within 2 hours after the person accused is apprehended."[6] CJ § 10-304(b)(1) requires that "[t]he test of breath shall be administered by a qualified person with equipment approved by the toxicologist under the Postmortem Examiners Commission at the direction of a police officer." As a precaution,

_____

[6]In cases of determining the drug or controlled dangerous substance content of a person's blood, CJ § 10-303(b)(2) requires that "the specimen of blood shall be taken within 4 hours after the person accused is apprehended."

- 14 -

"[t]he officer arresting the individual may not administer the test of breath." CJ § 10-304(b)(2). A "qualified person" is an individual

> who has received training in the use of the equipment in a training program approved by the toxicologist under the Postmortem Examiners Commission and who is either a police officer, a police employee, an employee of the office of the Chief Medical Examiner, or a person authorized by the toxicologist under the Postmortem Examiners Commission.

CJ § 10-304(a)(3).

Under CJ § 10-306(a)(1)(i), where an individual is charged with violating TR § 21-902, a copy of alcohol breath test results "signed by the technician or analyst who performed the test[] is admissible as substantive evidence without the presence or testimony of the technician or analyst who performed the test." To be admissible, though, the breath test report must "[i]dentify the technician or analyst as a 'qualified person,' as defined in [CJ] § 10-304[,]" "[s]tate that the test was performed with equipment approved by the toxicologist under the Postmortem Examiners Commission at the direction of a police officer[,]" and "[s]tate that the result of the test is as stated in the report." CJ § 10-306(a)(2). Significantly, CJ § 10-309(a)(1)(ii) provides that "[e]vidence of a test or analysis provided for in this subtitle is not admissible in a prosecution for a violation of [TR] § 21-902 . . . if obtained contrary to the provisions of this subtitle."

COMAR 10.35.02.08G[7]—at issue in this case—sets forth the method for administering a breath test and provides in its entirety:

---

[7]The Secretary of Health and Mental Hygiene adopted COMAR 10.35.02.01 through 10.35.02.09. See 37:20 *Maryland Register* 1394 (Sept. 24, 2010), available at https://msa.maryland.gov/megafile/msa/speccol/sc5300/sc5339/000113/013000/013104/unrestricted/20100980e.pdf [https://perma.cc/R67L-2WE7].

(1) For at least 20 minutes before a breath sample is taken, an individual may not:

(a) Eat or drink;

(b) Have any foreign substance in the individual's mouth or respiratory tract; or

(c) Smoke.

(2) The individual shall be observed and mouth checked.

(3) Observation of the individual shall be performed by:

(a) A breath test operator;

(b) Other uniformed or civilian law enforcement personnel; or

(c) Any combination of a breath test operator and uniformed or civilian law enforcement personnel.

(4) The testing procedure shall begin with a blank test to ensure that no alcohol is present in the breath path of the breath testing instrument.

(5) A validation test shall be run before the individual begins the testing process.

(6) If the breath testing instrument fails to obtain a reading plus or minus 10 percent of the stated alcohol concentration on the validation test, then the subject test shall be discontinued.

(7) The individual shall be instructed to take a breath and then deliver a breath sample into the instrument by blowing into the mouthpiece and breath tube until instructed to stop.

(8) After each subject breath sample, a blank check shall be performed to ensure that no alcohol is present in the breath path.

(9) Two breath samples shall be collected and analyzed by the breath testing instrument.

(10) A third breath sample shall be collected only if the absolute difference between the results of the first and second samples exceeds 0.020 g/210L.

(11) A validation test of known alcohol concentration shall be run after the individual has given the required number of breath samples.

(12) If the instrument fails to obtain a reading plus or minus 10 percent of the stated concentration on the validation test, then the subject test is invalid.

(13) The lower of the two or lowest of the three results of the subject test shall be truncated to the second decimal place and reported as the result of the breath test.

COMAR 10.35.02.08G does not define "observation" or set forth parameters or requirements for how an individual is to be observed for the twenty minutes before administration of a breath test. Nor does COMAR 10.35.02.08G provide that a breath test is invalid if the observation period is not complied with.

From the plain language of the statutes in Subtitle 3 of Title 10 of the Courts and Judicial Proceedings Article, it is clear that CJ § 10-309(a)(1)(ii) operates as a statutory exclusionary rule, pursuant to which evidence of a breath test or analysis in a prosecution for violation of TR § 21-902 must be excluded where such evidence is "obtained contrary to the provisions of th[e] subtitle." Stated differently, breath test results are not admissible if obtained contrary to the provisions in Subtitle 3 of Title 10 of the Courts and Judicial Proceedings Article. As such, for evidence of a breath test to be admissible, among other things, the specimen of breath must be taken within two hours after the person accused is apprehended, see CJ § 10-303(a)(2), the breath test must be administered by a qualified person, see CJ § 10-304(b)(1), and the report of the breath test results must include three specified pieces of information, including that the result of the test is as stated in the report, see CJ § 10-306(a)(2). If any of these provisions, or any other provision of Subtitle 3, is

- 17 -

not complied with, then breath test results are not admissible pursuant to CJ § 10-309(a)(1)(ii).

Exclusion of breath test results is tied to compliance with statutory requirements, not regulatory requirements. The statutes, and in particular CJ § 10-309(a)(1)(ii), the provision which sets forth the exclusionary rule, make no reference whatsoever to COMAR regulations or any compliance with them. Nothing in the statutory scheme indicates that the breath test results are not admissible for lack of strict compliance with the regulations. CJ § 10-309(a)(1)(ii) refers only to compliance with "the provisions of this subtitle[,]" not compliance with regulations or anything else that may be required outside of the provisions of the subtitle. CJ § 10-309(a)(1)(ii) does not reference compliance with the COMAR regulations generally or with the twenty-minute observation time set forth in COMAR 10.35.02.08G specifically. In fact, nothing in any of the statutes in Subtitle 3 includes a requirement of strict compliance with COMAR regulations for admissibility of breath test results or a requirement of a twenty-minute observation period prior to the administration of a breath test. This is telling because the statutes demonstrate that the General Assembly knows how to impose, and has imposed, a time requirement related to the admissibility of breath test results—namely, that the breath specimen used for determining alcohol concentration must be taken within two hours after apprehension of the person accused. See CJ § 10-303(a)(2). The General Assembly did not impose, in the statutes in Subtitle 3, the requirement of an observation period or a time requirement for the observation period set forth in COMAR 10.35.02.08G.

The plain language of the statutes in Subtitle 3 is clear and unambiguous as to the

- 18 -

requirements for admissibility of breath test results and the statutes do not provide that breath test results are inadmissible as a result of noncompliance with the twenty-minute observation period set forth in COMAR 10.35.02.08G. By its plain language, the exclusionary rule set forth in CJ § 10-309(a)(1)(ii) does not operate to exclude evidence of a breath test that may have been obtained contrary to the provisions of the COMAR regulations. We decline to read into CJ § 10-309(a)(1)(ii) the requirement that breath test results are not admissible if obtained contrary to the provisions of COMAR regulations.

COMAR 10.35.02.08G sets forth the method for administering a breath test, but does not include an exclusionary rule that applies where strict compliance with the prescribed method is lacking. COMAR 10.35.02.08G contains thirteen subsections, but only one subsection provides for the invalidity of a breath test. To be exact, COMAR 10.35.02.08G(12) provides that "[i]f the instrument fails to obtain a reading plus or minus 10 percent of the stated concentration on the validation test, then the subject test is invalid." In other words, the results of a breath test would be invalid, and hence inadmissible, only under the circumstance set forth in COMAR 10.35.02.08G(12). Nothing in COMAR 10.35.02.08G(1), (2), or (3), the provisions relating to the twenty-minute observation period, mentions the invalidity or inadmissibility of breath test results where the provisions are not complied with. In the absence of any exclusionary provision in the statutes or COMAR 10.35.02.08G pertaining to noncompliance with the twenty-minute observation period, we decline to read such an exclusionary provision into either the regulations or statutes.

Where neither the controlling statutes nor the relevant COMAR regulation contains

an exclusionary rule and where the Fourth Amendment exclusionary rule is not applicable,[8] there is no general exclusionary rule in Maryland that would provide for the suppression of evidence in a criminal case for a violation of the Maryland laws that are at issue in this matter (driving under the influence of alcohol, driving under the influence of alcohol per se, and driving while impaired by alcohol). For instance, in King v. State, 434 Md. 472, 495, 76 A.3d 1035, 1048 (2013), we declined to conclude that a suppression remedy existed "[b]ecause the exclusionary rule is not a remedy the courts apply lightly, and the [General Assembly] made no indication that suppression is the proper remedy for a violation of the DNA Collection Act[.]" (Cleaned up). We stated that, "even if a State violation of the Act . . . had been proven, . . . the trial court properly declined [the defendant]'s motion to suppress the DNA database match[.]" Id. at 495, 76 A.3d at 1048. As another example, in Fitzgerald v. State, 384 Md. 484, 507, 864 A.2d 1006, 1019 (2004), we observed that, although the defendant "acknowledge[d] our precedent declining to recognize an exclusionary rule under [the Maryland] Declaration of Rights[,]" the defendant nonetheless urged this Court "to adopt an exclusionary rule for evidence obtained in violation of Article 26." (Citation omitted). We declined the invitation, concluding that the case was not the

---

[8]In fact, in McFarlin v. State, 409 Md. 391, 410, 975 A.2d 862, 873 (2009), we agreed with the State that even if there had been a violation of a COMAR regulation, "a violation of a State regulation does not trigger the exclusionary rule" because "[t]he exclusionary rule generally applies only to violations of the Fourth Amendment." (Cleaned up). See also Motor Vehicle Admin. v. Richards, 356 Md. 356, 368, 739 A.3d 58, 65 (1999) (We explained that the Fourth Amendment exclusionary rule is "a judicially created means of deterring illegal searches and seizures[,]" and "does not proscribe the introduction of illegally seized evidence in all proceedings or against all persons, but applies only in contexts where its remedial objectives are thought most efficaciously served[.]" (Cleaned up)).

one "to revisit whether Article 26 contains an exclusionary rule, because even were we to adopt [the defendant]'s position, we would uphold the" validity of the dog sniff at issue in the case. Id. at 509, 864 A.2d at 1020. And, as the Court of Special Appeals has recognized, "[o]ne may not wish an exclusionary rule into being by waving a magic wand. It is something that must be deliberately and explicitly created to cover a given type of violation." Sun Kin Chan v. State, 78 Md. App. 287, 311, 552 A.3d 1351, 1363 (1989).[9]

Given the absence of an applicable exclusionary rule, we, like the Court of Special Appeals, hold that an alleged lack of compliance with the twenty-minute observation period set forth in COMAR 10.35.02.08G goes to the weight to be afforded breath test results by the trier of fact, not to their admissibility. See Dejarnette, 251 Md. App. at 480, 254 A.3d at 532. In this case, the circuit court instructed the jury using the pattern jury instruction on driving under the influence of alcohol per se, see MPJI-Cr 4:10.3 (Driving Under the Influence of Alcohol Per Se), which included the following: "When deciding what weight, if any, to give to the test result, you may consider all of the evidence in the

_____

[9]With respect to the Maryland Rules, the default rule is that a trial court has discretion to determine the consequences of noncompliance where no consequences are prescribed. Maryland Rule 1-201(a) provides:

> These rules shall be construed to secure simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay. When a rule, by the word "shall" or otherwise, mandates or prohibits conduct, the consequences of noncompliance are those prescribed by these rules or by statute. If no consequences are prescribed, the court may compel compliance with the rule or may determine the consequences of the noncompliance in light of the totality of the circumstances and the purpose of the rule.

In other words, under the Maryland Rules, suppression or inadmissibility of evidence is not the required consequence for noncompliance with a rule.

case, including evidence that tends to show the test result was inaccurate or unreliable." The substance of the pattern jury instruction is consistent with the conclusion that an allegation of inaccuracy or unreliability concerning the results of a breath test goes to the weight to be given the evidence, not its admissibility.

Dejarnette relies on the 35-year-old case of Casper v. State, 70 Md. App. 576, 521 A.2d 1281, cert. denied, 310 Md. 129, 527 A.2d 50 (1987), and argues that the "[f]ailure to comply with the twenty-minute observation period constitutes compelling indicia of unreliability" and thus such a failure raises an issue as to the admissibility of the evidence. In Casper, 70 Md. App. at 579, 521 A.2d at 1283, a breath test was administered to a defendant after standard field sobriety tests suggested that the defendant was not sober. The breath test indicated that the defendant's "blood contained .21% alcohol by weight." Id. at 579, 521 A.2d at 1283. At trial, the State established the officer's qualifications to administer the breath test and introduced a written statement from a toxicologist with the Maryland Department of Post Mortem Examiners certifying that the breathalyzer used to test the defendant was "approved for chemical analysis to determine blood alcohol concentrations." Id. at 579, 521 A.2d at 1283. In addition, the statement from the toxicologist certified that the "(1) Breath Alcohol Simulator; (2) Certified Breathalyzer Solution; and (3) Ampule Gauge, as manufactured and supplied by the breathalyzer's maker, were approved for use in conjunction with the machine." Id. at 579-80, 521 A.2d at 1283. Ampules "are sealed glass containers of a specific chemical compound made by the company that manufactures the breathalyzer apparatus." Id. at 583 n.5, 521 A.3d at 1285 n.5. The officer who administered the breath test testified as to the procedures used

and, over the defendant's objections, the trial court admitted the breath test results into evidence.  See id. at 580-81, 521 A.2d at 1283-84.

On appeal, the defendant asserted, among other things, that the "ampules used in his test should have been examined and that the State should have demonstrated that the ampules remained effective after nine months."  Id. at 583, 521 A.2d at 1285.  The Court of Special Appeals rejected the defendant's argument, holding "that the State toxicologist's approval of ampules certified by an independent laboratory using random testing [met] the requirements of [CJ §] 10-304(b) and constitute[d] *prima facie* evidence that any ampule in the lot [was] chemically accurate."  Id. at 585-86, 521 A.2d at 1286 (footnote omitted).  The Court was unpersuaded by the "assertion that the age of [the] ampules made [the defendant's] test results unreliable and, therefore, inadmissible."  Id. at 586, 521 A.2d at 1286.  The Court pointed out that the defendant "was free to challenge that reliability with evidence tending to show that the ampules had changed since being certified."  Id. at 586, 521 A.2d at 1286 (citation omitted).

The Court of Special Appeals held:

Before results from a chemical breath test are admissible into evidence, the State must demonstrate that: (1) the test was administered within two hours of defendant's apprehension; (2) a qualified person administered the test; and (3) the State toxicologist approved the equipment (including ampules) used to determine defendant's blood alcohol content.  Once these three points are proven, the State has demonstrated the *prima facie* reliability of the results and they may come into evidence subject to [two] caveats[.]

Id. at 591, 521 A.2d at 1289.  In describing the first caveat, the Court of Special Appeals stated that, notwithstanding proof of the three facts, "a defendant must be given an opportunity to offer competent evidence challenging the reliability of his test results."  Id.

- 23 -

at 591, 521 A.2d at 1289. Where a defendant presents evidence that "so compromises the reliability of the results that to admit them would deprive the defendant of a fair trial or due process, the results must be excluded." Id. at 591-92, 521 A.2d at 1289. Although the Court of Special Appeals rejected the claim that the test results were unreliable and, therefore, inadmissible, the Court remarked: "While much of this kind of proof goes to the weight to be given to the test results, at some point best discerned by trial courts, indicia of unreliability quickly create an issue of admissibility." Id. at 592, 521 A.2d at 1289.

In Brice v. State, 71 Md. App. 563, 576, 526 A.2d 647, 654 (1987), the Court of Special Appeals cited Casper and stated that the burden is on "the defendant to impeach the presumptive reliability of a test that satisfied the legislatively established requirements" because "test results produced by a qualified person using certified equipment in a timely manner are *prima facie* reliable." (Cleaned up). The Court of Special Appeals reiterated that, in Casper, 70 Md. App. at 586, 521 A.2d at 1286, it had explained "that the burden was on the defendant to challenge reliability and [] that the challenge, in any event, would go only to weight and not to admissibility[.]" Brice, 71 Md. App. at 576-77, 526 A.2d at 654. In Brice, id. at 577, 526 A.2d at 654, the Court of Special Appeals held that the State did not bear the burden of negating speculation that medication given to the defendant in the case may have adversely affected the test result. In Brice, the Court of Special Appeals did not interpret Casper to stand for the proposition that challenges to the reliability of test results create an issue as to admissibility.

Given the holdings in Casper and Brice, we are unpersuaded by Dejarnette's reliance on Casper for the argument that noncompliance with the twenty-minute

observation period creates "compelling indicia of unreliability" and that the breath test results were therefore inadmissible. Aside from the circumstance that the language in Casper that Dejarnette relies on was not part of the Court of Special Appeals's holding in the case, the record in this case demonstrates that the three factors pertaining to the admissibility of the breath test results (which are set forth in the relevant statutes) discussed in Casper, 70 Md. App. at 591, 521 A.2d at 1289, were satisfied. Dejarnette did not offer any evidence to substantiate his assertion that the breath test administered to him was unreliable. For instance, Dejarnette did not offer evidence that he ate, drank, or smoked during the observation period, or that he regurgitated. At most, he appears to suggest that he could have perhaps belched during the observation period and that, had he belched, "it is possible that . . . he would have attempted to conceal it and that Trooper Brown would not have noticed it." Such speculation—that something could have happened during the observation period that could possibly have compromised the breath test results—does not rise to the level of the type of compelling evidence necessary to call into question the reliability of test results such that the circuit court should have considered it to create an issue of admissibility.

We are unpersuaded by Dejarnette's argument that the breath test results were inadmissible under Maryland Rule 5-403 due to a risk of unfair prejudice.[10] First, although

---

[10]In addition to arguing that the breath test results were inadmissible under Maryland Rule 5-403, Dejarnette compares the admission of breath test results to expert testimony under Maryland Rule 5-702. Dejarnette states that, "[f]or the same reasons that reliability is the touchstone for admissibility of expert scientific evidence, reliability should govern the admission of this scientific evidence." Maryland Rule 5-702 provides:

Dejarnette arguably raised an issue related to Maryland Rule 5-403 in the circuit court by contending in the motion *in limine* that admission of the breath test results would "be prejudicial to" him and "serve only to confuse a jury," he did not raise an issue as to Maryland Rule 5-403 on brief in the Court of Special Appeals and as a result the Court did not address the Rule in its opinion. As such, an argument could be made—as the State does—that Dejarnette has not preserved the issue for appellate review. See Md. R. 8-131(b)(1).

In any event, Maryland Rule 5-403 does not create an exclusionary rule applicable to the admissibility of breath test results. Rulings as to admissibility of evidence under Maryland Rule 5-403 are discretionary determinations of a trial court and, as such, are

---

Expert testimony may be admitted, in the form of an opinion or otherwise, if the court determines that the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. In making that determination, the court shall determine

(1) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education,

(2) the appropriateness of the expert testimony on the particular subject, and

(3) whether a sufficient factual basis exists to support the expert testimony.

Insofar as the applicability of Maryland Rule 5-702 to the admission of breath test results is concerned, CJ § 10-306(a)(1)(i) specifically authorizes admission of a copy of breath test results into evidence if the conditions for admissibility set forth in the statute are met. This negates any suggestion that breath test results must be scrutinized under Maryland Rule 5-702 as a prerequisite to admissibility.

reviewed for an abuse of discretion.[11]  Maryland Rule 5-403 provides: "Although relevant, evidence **may** be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  (Emphasis added).  In this case, with respect to the danger of unfair prejudice under Maryland Rule 5-403, if an issue had been raised, the circuit court would have had the discretion to consider the evidence and either potentially fashion a remedy or exclude the evidence if it had determined that the probative value of the breath test was substantially outweighed by the danger of unfair prejudice, *i.e.*, exclusion of the breath test results would not have been automatic under the Rule.  But, neither a potential remedy nor exclusion under Maryland Rule 5-403 was warranted because Dejarnette merely suggested that something could have occurred during the observation period that could possibly have affected the breath test results.  Contrary to his contentions, Dejarnette has not identified in any meaningful way any evidence indicating that the probative value of the breath test results was substantially outweighed by the danger of unfair prejudice under Maryland Rule 5-403.

We are also not convinced that case law from other jurisdictions relied on by Dejarnette compels a contrary result where the Maryland statutes and regulation at issue are clear and unambiguous and no case requires suppression or non-admission of breath

---

[11]A trial court's "ruling on the admissibility of evidence under Rule 5-403 is reviewed for abuse of discretion."  Montague v. State, 471 Md. 657, 673-74, 243 A.3d 546, 555 (2020) (citation omitted).  And, "[a]ppellate courts are generally loath to reverse a trial court unless the evidence is plainly inadmissible under a specific rule or principle of law or there is a clear showing of an abuse of discretion."  Id. at 674, 243 A.3d at 555-56 (cleaned up).

test results for alleged noncompliance with the twenty-minute observation period. Although we need not delve into the matter, we briefly address a sampling of the cases from other jurisdictions. Dejarnette asserts that courts in at least twelve States "have excluded breath test results as inadmissible where the State fails to establish compliance with the requisite observation period." (Citation omitted). In addition, according to Dejarnette, courts in "[t]welve other [S]tates [] analyze compliance with the observation period [a]s a question of admissibility, rather than weight." (Cleaned up). Dejarnette acknowledges, though, that at least "two state appellate courts have held that compliance with the observation period goes merely to the weight of the breath test results." (Citations omitted).

One of the cases that Dejarnette cites for the proposition that courts have excluded breath test results where the State failed to establish compliance with an observation period is Reed v. Hill, 770 S.E.2d 501 (W. Va. 2015). In Reed, id. at 505, 508, the breath test results that were held to be properly excluded were those of a preliminary breath test, taken only eight minutes after a law enforcement officer's initial contact with the defendant and ten minutes before the defendant's arrest, thus not satisfying a fifteen-minute observation period prior to administration of a preliminary breath test as required by an applicable legislative rule. In discussing a secondary chemical breath test that occurred after the defendant was arrested and transported to the police station, the Supreme Court of Appeals of West Virginia observed that, "[t]o be admissible into evidence and give rise to a presumption of DUI, a secondary chemical test must be performed in accordance with methods and standards approved by the Bureau for Public Health[,]" and the Bureau had

- 28 -

"promulgated a legislative rule requiring a twenty-minute observation period" before administration of a secondary breath test. Id. at 505, 511 (citations omitted). The legislative rule at issue provided that the officer must "keep the person being tested under constant observation for a period of twenty minutes before the secondary breath test is administered[.]" Id. at 511 (cleaned up).

In discussing the phrase "constant observation" used in the legislative rule, the Court stated:

> [T]he circuit court has interpreted the legislative rule to require that a law enforcement officer may never divert his or her eyes from the person to be tested, even when the person is in close proximity to the officer. We disagree. The regulation does not limit the period of constant observation to "constant visual observation," and a law enforcement officer can ensure that a person has nothing in his or her mouth without fixedly staring at the person for the entire twenty-minute period. In addition to visually observing, an officer who is in close proximity may rely on his other senses, including hearing and smell, to maintain a constant observation of the test subject.

Id. at 512 (referencing W. Va. Code St. R. § 64-10-7.2(a)). The Court explained:

> Accordingly, we now hold that the requirement in West Virginia C.S.R. § 64-10-7.2(a) (2005) that a law enforcement officer shall keep the person being tested under constant observation for a period of twenty minutes before administering a secondary chemical breath test does not require uninterrupted visual monitoring. The observation may be accomplished by the officer's use of his or her visual, auditory, and olfactory senses. The manner in which the officer conducts the observation period must serve the purpose of ensuring that the person being tested has nothing in his or her mouth at the time of the test and has had no food, drink, or foreign matter in his or her mouth during the observation period. If the officer diverts his eyes from the person being observed, the officer must be in close enough proximity to be able to constantly detect with his other senses whether the person has food, drink, or foreign matter in his or her mouth.

Reed, 770 S.E.2d at 513 (footnote omitted). In Reed, id. at 514, although preliminary

- 29 -

breath test results were properly excluded because the observation time was not complied with in terms of the length of time of observation, the Court concluded that the secondary chemical breath test results were improperly excluded by the trial court, as the officer testified that the defendant was in his presence and view during the twenty-minute observation period and he ensured that the defendant had nothing in his mouth during that time. This conclusion does not support the outcome that Dejarnette urges us to reach in his case.

Vanderpool v. Dir. of Revenue, 226 S.W.3d 108 (Mo. 2007) (*en banc*), is among the cases that Dejarnette cites for the proposition that courts have determined that compliance with an observation period goes to admissibility of breath test results, not weight.[12] Dejarnette's description of the holding in Vanderpool—that the Supreme Court of Missouri held that a breath test is not admissible "where an officer failed to conduct fifteen minutes of continual observation and the driver presented some evidence of contamination"—is not quite accurate. Rather, in Vanderpool, id. at 110, the Court held that, under its case law, the trial court had erred in determining "that the blood alcohol test results were inadmissible solely because the trooper did not maintain an uninterrupted 15-minute observation while transporting [the driver] to the Sheriff's Department for administration of the test." In other words, in Vanderpool, the Court did not hold that the

---

[12]Dejarnette appears to cite two sets of cases, the first of which includes Reed and other cases in which courts allegedly excluded breath test results for lack of compliance with an observation period. The second set of cases includes Vanderpool and other cases in which courts allegedly determined that compliance with an observation period goes to admissibility, not weight.

breath test was inadmissible.  Rather, the Court discussed compliance with the observation period and explained that it had

> established the analytical framework for assessing claims that blood alcohol test results are inadmissible due to an alleged failure to abide by the 15-minute observation requirements.  This Court held that a blood alcohol test is not rendered inadmissible when a driver establishes that the officer did not conduct an uninterrupted, 15-minute visual observation of the driver.  In addition to the lack of continuous observation, the driver must also present some evidence that he or she smoked, vomited or orally ingested some other materials during the 15 minute period, or present evidence showing, by expert testimony or otherwise, that the driver did something or was subject to some factor other than smoke, oral intake of any material, or vomiting that affects the validity of the blood alcohol results.  The lack of observation, without more, does not provide a basis to question the validity of the blood alcohol test results.

Id. (cleaned up).  In addition, as the Court of Special Appeals observed in this case, the circumstance that "[t]here are other jurisdictions that require less than a twenty-minute observation period," such as Missouri, suggests that "a shorter period of observation is sufficient for the purpose of administering a valid breath test."  Dejarnette, 251 Md. App. at 476, 254 A.3d at 529 (citations omitted).

In our view, that other jurisdictions have different statutory or regulatory requirements and that courts in those jurisdictions may address alleged noncompliance with an observation period differently does not compel the result that Dejarnette seeks in this case—that alleged noncompliance with the twenty-minute observation period set forth in COMAR 10.35.02.08G goes to the admissibility of the breath test results, not the weight to be given to the evidence.  As explained above, the plain language of the statutes and regulation leads to the conclusion that the matter is a question of weight, not admissibility, and the exclusion or a finding of inadmissibility of breath test results is not required where

the twenty-minute observation period may not have been complied with.

## II.

### The Parties' Contentions

Dejarnette contends that the record in this case does not support a finding that Trooper Brown and Sergeant Todd complied with the twenty-minute observation period. Dejarnette argues that, to the extent that the circuit court made such a finding, the finding was clearly erroneous. Dejarnette asserts that the State bears the burden of establishing that officers sufficiently observed a driver for the duration of the observation period and that continuous observation for at least twenty minutes occurred. Dejarnette maintains that the observation period in this case was deficient because Trooper Brown spent time reading the Advice of Rights form and filling out paperwork, thus impeding his ability to observe, and because testimony did not establish that either officer continuously observed him for the entire twenty minutes. Dejarnette asserts that the argument that the circuit court failed to make a finding concerning compliance with the observation period is preserved for appellate review and reversal is warranted because the circuit court did not make such a finding.

The State responds that, evidence of the results of a breath test may not be excluded for lack of compliance with the twenty-minute observation period and even if that were the case, the Court of Special Appeals correctly determined that the record in this case showed compliance. The State contends that the purpose of the observation requirement, as demonstrated by the plain language of the regulation, is "to ensure that nothing enters the mouth by external means that could interfere with the test." According to the State,

- 32 -

"constant, rapt attention" is not required to observe whether someone is eating, drinking, or smoking. The State argues that, in this case, Trooper Brown was close to Dejarnette and able to observe whether Dejarnette ate, drank, or smoked, and that the record supports a finding of compliance with the observation period.

The State asserts that Dejarnette's argument that the circuit court failed to make an explicit factual finding of compliance is not preserved for appellate review and that this Court should decline to address the matter. The State maintains that Dejarnette failed to preserve the issue because he did not object on the ground that the circuit court's factual findings were not sufficient. The State contends that, even if the issue is preserved, the circuit court was not required to make explicit factual findings concerning compliance with the observation period.

**Analysis**

As an initial matter, we note that, because we hold that alleged noncompliance with the twenty-minute observation period goes to the weight of the evidence rather than to the admissibility of breath test results and Dejarnette has raised no meaningful allegation as to any irregularity having occurred during the observation period, we need not necessarily address whether the record in this case demonstrates that the officers complied with the observation period. Even so, we conclude that the record supports a finding that the officers complied with the twenty-minute observation period. And, we determine that the circuit court found on the record that the officers complied with the requirements of the applicable COMAR regulation.

COMAR 10.35.02.08G does not define "observed" or "observation" and neither

- 33 -

term is qualified by a word such as "continuous," "unbroken," "constant," or anything of the like. Indeed, neither term is qualified whatsoever. The regulation does not require that the person performing the observation watch the person and do nothing else. The regulation does not describe the manner in which the observation is to be performed, other than that the observation is meant to ensure that for the twenty minutes before administration of a breath test, an individual does not eat, drink, smoke, or have any foreign substance in the individual's mouth or respiratory tract, and the individual's mouth must be checked. See COMAR 10.35.02.08G(1), (2). Given this, we will not read into the regulation something that is not there and hold that observation means that an officer must give the individual constant, fixed, or unbroken attention during the twenty-minute period. Rather, like the Court of Special Appeals, we conclude that it is "unreasonable to require continuous, unbroken observation for twenty minutes" and that an officer certainly has the ability to discern whether an individual eats, drinks, smokes, or puts something in the individual's mouth without the officer's gaze being solely transfixed on the person for an uninterrupted period of twenty minutes. Dejarnette, 251 Md. App. at 478, 254 A.3d at 530-31. We agree with the Court of Special Appeals that "[o]fficers may use numerous senses to observe an individual to ensure they do not eat, drink, smoke, or put something in their mouth." Id. at 478, 254 A.3d at 531.

The record in this case amply demonstrates that the officers complied with the twenty-minute observation period. Forty-four minutes elapsed between the time that Dejarnette was stopped at 1:59 a.m. and the time at which the first test result occurred at 2:43 a.m. Thirty-one minutes elapsed between the time that Dejarnette was arrested at 2:12

a.m. and the first test result.   And, twenty-two minutes elapsed between the time that Dejarnette arrived at the police barrack at 2:21 a.m. and the first test result.   For the thirty-one minutes between arrest and the first test result (2:12 a.m. to 2:43 a.m.), Trooper Brown was with Dejarnette and close enough to him to observe whether he ate, drank, smoked, or had anything in his mouth.   At the time of arrest, Trooper Brown checked Dejarnette's mouth and pockets before he cuffed Dejarnette's hands behind his back and placed him in the front passenger seat of the police car.   Trooper Brown transported Dejarnette to the police barrack and when they arrived at the barrack at 2:21 a.m., Sergeant Todd, the duty officer, met them and a second search was conducted in Sergeant Todd's presence. Sergeant Todd testified about the second search, stating that he had Dejarnette open his mouth and stick out his tongue, and he looked in his mouth and watched while Trooper Brown searched Dejarnette.   Trooper Brown testified that nothing was found in Dejarnette's mouth during either search.   During the search at the barrack, Trooper Brown checked Dejarnette's pockets and anything that Dejarnette had in them would have been removed and placed in a bag that Dejarnette did not have access to.

The evidence established that for the sixteen minutes between 2:21 a.m. and 2:37 a.m., Dejarnette was in Trooper Brown's presence at the barrack.   During that time, Trooper Brown took Dejarnette to the processing room, which he described as a small room of approximately eight or ten feet by twelve or fourteen feet containing a desk and two chairs.   When asked whether he was sure that Dejarnette did not have something in his mouth in the police car and the processing room, Trooper Brown testified: "All I could say was, he had his hands behind his back, and they were handcuffed" and Dejarnette's mouth

"was empty when he was placed in the car." Trooper Brown testified that during the drive to the police barrack and in the processing room, Dejarnette did not smoke, have anything to eat or drink, or put a mint in his mouth. Trooper Brown also testified that he did not hear or smell Dejarnette belch and that he did not see Dejarnette make any hand movements while he was seated uncuffed in the processing room. Sergeant Todd's testimony was consistent with Trooper Brown's. Sergeant Todd testified that, when he was in the processing room, Dejarnette did not have anything in his mouth and that he saw nothing amiss with him.

In short, the record supports a finding of compliance with the twenty-minute observation period. From the time of Dejarnette's arrest at 2:12 a.m.—and even before— until when the first breath sample was taken and the test result occurred at 2:43 a.m., Trooper Brown was in close proximity to Dejarnette and able to observe him. While he was in the police car, Dejarnette was in the front passenger seat, just a short distance from Trooper Brown, with his hands cuffed behind his back, making it almost impossible for him to eat, drink, smoke, or place a foreign substance in his mouth without that action being detected by Trooper Brown. While he was at the barrack, Dejarnette was a short distance from Trooper Brown in a small room, after having been searched twice and having any items in his possession removed from his pockets. Trooper Brown testified that Dejarnette did not have anything in his mouth while in the processing room and Sergeant Todd also testified that was the case when he was in the processing room with Dejarnette. The evidence in this case was more than sufficient to demonstrate compliance with the twenty-minute observation period.

To be sure, during the observation period, Trooper Brown read the DR-15 Advice of Rights form to Dejarnette. At the motions hearing, Dejarnette's counsel had Trooper Brown read aloud the Advice of Rights form. The circuit court advised Trooper Brown to "[r]ead it as if you're advising me[.]" Trooper Brown read the form and the circuit court noted that it took seven minutes. The following exchange then occurred:

[DEJARNETTE'S COUNSEL:] It's fair to say during the time that you were reading that, you were not looking at me; correct?

[TROOPER BROWN:] That's correct.[13]

[DEJARNETTE'S COUNSEL:] Okay.

THE COURT: But Sergeant Todd would have presumably been looking at me, if you were reading it to me?

[TROOPER BROWN:] Yes.

[DEJARNETTE'S COUNSEL:] Was Sergeant Todd in the room the entire time?

[TROOPER BROWN:] I don't recall if he was in the room the entire time.

Dejarnette's counsel attempted to suggest that Sergeant Todd may not have been in the room when the form was read. To the extent that Trooper Brown understood the circuit court to be asking about where Sergeant Todd would have been looking if he were in the room, Trooper Brown responded that Sergeant Todd would have been looking at the person

---

[13]In responding to questions from the circuit court, Trooper Brown confirmed that, while reading the Advice of Rights form, although he reads from the form, he looks at the person he is advising. The circuit court had instructed Trooper Brown to read the form to the court ("me"), not Dejarnette's counsel. So, that Trooper Brown responded that he was not looking at Dejarnette's counsel while reading the form means nothing. Trooper Brown had been instructed to look at the court as if the court were the person whom he was advising.

whom the form was being read to.  Either way, the outcome of the analysis is the same.

Even if Trooper Brown had been in the processing room alone with Dejarnette and reading

the form during the observation period, given his close proximity to Dejarnette in the small

room, he would have been able to observe whether Dejarnette ate, drank, smoked, or placed

a foreign substance in his mouth.  In addition, Dejarnette had been searched twice before

he went into the processing room and anything in his pockets was removed.  And, Trooper

Brown was close enough to Dejarnette that he would have been able to see, smell, or hear

if Dejarnette belched or vomited, and, for his part, Dejarnette has merely suggested that he

could possibly have done either.  We are satisfied that the twenty-minute observation

period prescribed by COMAR 10.35.02.08G was complied with.

Finally, like the Court of Special Appeals, we conclude that the circuit court found

that the officers complied with the twenty-minute observation period required by COMAR

10.35.02.08G.  See Dejarnette, 251 Md. App. at 480, 254 A.3d at 531.  When ruling on the

motion *in limine*, the circuit court described the sequence of events that had occurred:

> [W]hen you're arresting somebody, and you're putting them in the car, and
> you're driving, and you're taking them out of the car, and you search them
> again, and you are taking them down to the room, you know, presumably,
> they're in close proximity to you, they're not away from you, and you can
> observe whether they've belched or vomited, the same as you can in a room.
> But, quite frankly, I think best practices is that, you're in a room with them,
> as the trooper said, from as close as you were today with your client, and
> you're able to be close enough to smell, to touch, if necessary, if you suspect
> there's something in their mouth, to see, all of your tactile senses are in such
> a close range, that you can make those observations.

The circuit court specifically determined that, between 2:21 a.m. and 2:43 a.m., "during

the 22 minutes, we've got two people, a combination of the two people[, *i.e.*, Trooper

- 38 -

Brown and Sergeant Todd,] that are making observations.  And neither one observed a belch, a vomit, a stick of gum, a cigarette, anything to the contrary that would invalidate the test[.]"  It is clear that in ruling on the motion *in limine*, the circuit court found that the officers complied with the twenty-minute observation period set forth in COMAR 10.35.02.08G, and that the court's factual findings are supported by the record.  Nothing more was required.  The Court of Special Appeals correctly affirmed the judgment of the circuit court.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED.  PETITIONER TO PAY COSTS.**